# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> BRIAN LANE DUKE, <br><br> Defendant. | Case No. 20-cr-01445-BAS-1 <br><br> **ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE** <br> **(ECF No. 66)** |

Defendant Brian Lane Duke moves for compassionate release, arguing that his mental health issues, exacerbated by COVID-19, warrant release. (ECF No. 66.) The Court referred the case to Federal Defenders pursuant to General Order 692-B for potential appointment of counsel. (ECF No. 68.) After reviewing Defendant's psychological records, Federal Defenders determined further assistance of counsel was not necessary. (ECF No. 71.) The Government then opposed the Motion. (ECF No. 73.) For the reasons stated below, the Court **DENIES** the Motion.

I. **BACKGROUND**

On May 15, 2021, this Court sentenced Defendant to 66 months in custody following his guilty plea to possessing images of minors engaged in sexually explicit conduct. (ECF No. 61.) Defendant, who is approximately 55 years old, has served slightly less than half of this sentence.

Before his conviction, Defendant worked as a school bus driver, and, after being terminated, he began a video business primarily geared to school functions and events. (Presentence Report ("PSR") ¶ 8, ECF No. 41.) Defendant admitted some of the functions he videoed were dance recitals, including "sexy dancing" by 7-to-8-year-old children. (*Id.*) "He believed a parent began spreading rumors about him, which he believes led to his termination." (*Id.*) There were reports from neighbors that Defendant had been watching neighborhood children with binoculars and had been seen speaking with local children and attempting to give them books, although Defendant denied these allegations. (PSR ¶ 15; ECF Nos. 43, 48.)

Defendant now files a Motion for Compassionate Release. (ECF No. 66.) He argues his mental health issues, which he suspects have been worsened by COVID-19, warrant release. (ECF No. 66.) Specifically, he points to anxiety and depression with episodes of memory loss. (*Id.*) ("I do not know if my memory loss is caused by some form of early onset dementia or by my stress, anxiety or PTSD, perhaps all of the above. I also suspect that the COVID-19 virus makes it all worse."). Defendant is afraid his next episode could "[create a] risk of inmate violence." (*Id.*)

A review of the medical records submitted by Defendant with his Motion shows that he has been diagnosed with "generalized anxiety disorder." (ECF No. 66.) The Beck Anxiety Inventory score indicates "moderate anxiety." (*Id.* at 26.) He "shows signs of paranoia, however, this does not sound like acute psychosis." (*Id.* at 25.) The Bureau of Prisons ("BOP") prescribed Ativan, which "did seem to work well for him." (*Id.*) Although Defendant was diagnosed by Health Services with paranoid personality disorder, this is not supported by observations from a Psychology Services assessment. (*Id.* at 27.) Defendant agrees that he does not believe he has psychotic symptoms and has rejected the anti-psychotic medication offered to him. (*Id.*) Instead, he is taking Zoloft, as prescribed, "which he states is helping him manage anxiety symptoms." (*Id.*)

According to the Government, despite it offering a vaccination against COVID-19, Defendant refused to be vaccinated. (ECF No. 73.) Defendant did contract COVID-19 in

January 2022, but according to his medical records, he is now fully recovered. (ECF No. 66 at 6, 14–16.) There is nothing in his medical records to suggest long-term effects from this virus.

Defendant shows no evidence that he has exhausted his administrative remedies with the BOP, although the Government suggests such an attempt may be futile. (ECF No. 73.)

## II. ANALYSIS

### A. Exhaustion of Administrative Remedies

Under 18 U.S.C. § 3582(c)(1)(A), a court may, in certain circumstances, modify or reduce a defendant's term of imprisonment, after he has exhausted his administrative remedies, if "considering the factors set forth in [18 U.S.C.] section 3553(a)]" the Court finds, as relevant here, that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Holden*, 452 F. Supp. 3d 964, 966 (D. Or. 2020).

"The district court must enforce the administrative exhaustion requirement" when it is properly invoked by the Government. *United States v. Keller*, 2 F.4th 1278, 1280 (9th Cir. 2021). "Requiring inmates to exhaust their administrative remedies before seeking court intervention serves several purposes. First, it protects administrative agency authority by guaranteeing agencies the 'opportunity to correct [their] own mistakes.'" *United States v. Ng Lap Seng*, 459 F. Supp. 3d 527, 532 (S.D.N.Y. 2020) (quoting *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)). "Second, it promotes efficiency since claims 'generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court.'" *Id.*

Section 3582 provides two alternative routes to exhaustion. In the first, a petitioner files a petition with the Warden seeking release, which is denied by the Warden and the petitioner proceeds to continue to fully exhaust his or her administrative remedies by appealing this refusal from the Warden. In the second, the Warden takes no action, 30 days

lapse, and because of the Warden's failure to act, the petitioner may proceed without fully exhausting his or her administrative remedies.

Defendant provides no evidence that he attempted to exhaust his administrative remedies in this case. The Court could deny Defendant's Motion for Compassionate Release on this ground alone. However, the Government suggests that the BOP is likely to deny any request based on mental health needs. (ECF No. 73.) Therefore, requiring Defendant to exhaust his administrative remedies may be futile. The Court, thus, turns to the underlying issues.

### B.    Extraordinary and Compelling Reasons

Unfortunately, Congress provided no statutory definition of "extraordinary and compelling reasons" and instead delegated that responsibility to the U.S Sentencing Commission. *See United States v. Aruda*, 993 F.3d 797, 800 (9th Cir. 2021). Due to vacancies in the Sentencing Commission, the Commission has been unable to update its definition of "extraordinary and compelling reasons" following passage of the First Step Act that amended § 3582(c)(1)(A). *Id.* Nonetheless, the Sentencing Commission's original policy statements, although not binding, may inform the district court's decision as to whether certain conditions are extraordinary and compelling. *Id.*

In the Application Notes, the Sentencing Commission gives examples of extraordinary and compelling reasons including where:

> The defendant is—
>
> (I)    suffering from a serious physical or medical condition,
>
> (II)   suffering from a serious functional or cognitive impairment, or
>
> (III)  experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover.

U.S.S.G. § 1B1.13(1)(A)(ii), Application Note 1(A)(ii) (last revised Nov. 1, 2021).

The Court agrees that, post-*Aruda*, "district courts are empowered to consider any extraordinary and compelling reason for release . . . even if not enumerated by the Sentencing Commission's statements." *United States v. Wright*, No. 19-cr-4286-GPC, 2022 WL 673265, at *3 (S.D. Cal. Mar. 7, 2022). "The Court may therefore consider Section 1B1.13 in its broad exercise of discretion, but it is not bound by its definition of extraordinary and compelling reasons." *Id.*

Although the Court is sympathetic to Mr. Duke's struggles with his mental health issues, such issues do not rise to the level of extraordinary and compelling reasons. "Some district courts have determined that mental health conditions are an insufficient basis to find extraordinary and compelling reasons exist for granting a motion for compassionate release." *United States v. Mendez*, No. 2:11-cr-356 KJM, 2021 WL 2003202, at *2 (E.D. Cal. May 19, 2021) (citing *United States v. Anderson*, No. 17-cr-595-YGR-1, 2020 WL 2838797, at *2 (N.D. Cal., June 1, 2020)). While this Court is not prepared to find that no mental health condition could an constitute extraordinary and compelling reason for release, Mr. Duke's showing is insufficient. His "generalized anxiety disorder" and "moderate anxiety" with some paranoia do not amount to a serious functional or cognitive impairment, nor does he show that he is unable to provide self-care within the environment of a correctional facility. The medications he has received (both Zoloft and Ativan) seem to work well to manage his symptoms. Therefore, the Court finds Defendant has failed to demonstrate extraordinary and compelling reasons for his release.

### C.   § 3553(a) Factors

Finally, this Court finds the § 3553(a) factors do not support releasing Defendant at this time. His offense was a serious one with real victims. Additionally, the Court finds the additional time in custody is necessary to protect the public from further crimes of Defendant, to promote respect for the law, and to provide just punishment for the offense.

//

//

### III. CONCLUSION

Defendant has failed to exhaust his administrative remedies. Even if he had done so, the Court finds he fails to show "extraordinary and compelling reasons" for his release. Further, the § 3553(a) factors do not support release. Therefore, the Court **DENIES** Defendant's motion for compassionate release. (ECF No. 66.)

**IT IS SO ORDERED.**

DATED: July 6, 2023

Hon. Cynthia Bashant
United States District Judge